JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME MONTOYA, et al., | ) NO. CV 13-3452 FMO (CWx) |
| Plaintiffs, | ) |
| v. | ) **ORDER REMANDING ACTION** |
| WELLS FARGO BANK, NA, et al., | ) |
| Defendants. | ) |

Having reviewed all the briefing filed with respect to plaintiffs' Motion to Remand and defendant Wells Fargo Bank's Notice of Removal Pursuant to 28 U.S.C. §§ 1441(b) and 1332 ("NR"), the court concludes as follows.

## INTRODUCTION

On April 10, 2013, plaintiffs Jaime Montoya ("Montoya") and Maria Cabrera ("Cabrera"), (collectively, "plaintiffs"), filed a complaint in Los Angeles Superior Court, Case No. CV-KC065927G, against defendants Wells Fargo Bank, N.A. ("defendant" or "WFB") and Does 1 through 10, inclusive, (collectively, "defendants"). Plaintiffs assert the following seven causes of action against defendants: (1) fraud; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) breach of contract; (5) negligence; (6) violations of the California Business and Professions Code ("Cal. Bus. & Prof. Code"), § 17200, et seq.; and (7) negligent infliction of emotional distress. (See NR, Exhibit ("Exh.") A ("Complaint")) at ¶¶ 20-100). On May 14, 2013,

WFB removed the action to this court on the basis of diversity jurisdiction. (See NR at 2). In its NR, WFB notes that: (1) plaintiffs are California citizens, (see id. at 2; see also Complaint at ¶ 1), and (2) WFB is a citizen of South Dakota. (See NR at 3).

## STATEMENT OF FACTS

"On January 27, 2006, plaintiffs executed a deed of trust against the subject property as security for a loan of $363,750.00 from [World Savings Bank, FSB ("WSB")]."[1] (See Complaint at ¶ 11).[2] Montoya, along with his wife and family, are residents of the subject property, located in El Monte, California. (See id. at ¶ 16). Cabrera, who also lives in El Monte, California, lives separately with her family. (See id.). Plaintiffs' loan was subject to negative amortization. (See id. at ¶ 13). In time, "Plaintiffs' maximum aggregate principal balance negatively amortized to $454,687.50" which represents 125% of the original principal amount. (See id. at ¶ 15). "In June 2011, Jaime was laid off from work and his household income . . . dramatically reduced. Jaime collected unemployment check[s] from June 2011 through December 2011. The reduced income created financial hardship which made [the] mortgage repayments unaffordable." (See id. at ¶ 17). Plaintiffs further allege that WFB denied them the assistance of a loan modification. (See id. at ¶ 19).

## STANDARD OF REVIEW

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The district courts . . . have original jurisdiction of all civil actions where the matter in controversy

---

[1] "Effective December 31, 2007, [WSB] changed its name to Wachovia Mortgage, FSB. Effective November 1, 2009, Wachovia Mortgage, FSB, was converted to [WFB]." (See NR at 2-3) (internal citations omitted).

[2] Although plaintiffs filed their First Amended Complaint on May 28, 2013, the court confines its analysis to the original Complaint. See Strotek Corp. v. Air Transp. Ass'n of Am., 300 F.3d 1129, 1131-32 (9th Cir. 2002) ("[Diversity] is determined (and must exist) as of the time the complaint is filed and removal is effected.").

exceeds the sum or value of $75,000" and where all parties to the action are "citizens of different States." 28 U.S.C. § 1332(a). "If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992). Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Id. "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id.

## DISCUSSION

Plaintiffs are residents of California. (See Complaint at ¶ 1). WFB claims that it is a citizen of South Dakota because its main office is located in Sioux Falls, South Dakota. (See NR at 3; see also id., Exh. E. ("Articles of Association")) ("The main office of this Association shall be in the City of Sioux Falls, County of Minnehaha, State of South Dakota."). The question currently before the court is whether, for the purposes of determining diversity jurisdiction, WFB is also located in, and thereby a citizen of, the state of its principal place of business.[3]

"[C]orporate citizenship is governed by 28 U.S.C. § 1332(c)(1), which provides that a corporation is a citizen of both its state of incorporation and, since 1958, the state in which its principal places of business is located." Martinez v. Wells Fargo Bank, 2013 WL 2237879, * 2 (N.D. Cal. 2013). In addition, national banks are subject to a separate jurisdiction provision, 28 U.S.C. § 1348, which provides, in relevant part, that:

> The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title

---

[3] WFB does not assert that its principal place of business is in California, however, its NR is predicated on that very fact. (See NR at 5).

3

> 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.
>
> All national banking associations shall, for the purposes of all other actions by or against them, <u>be deemed citizens of the States in which they are respectively located</u>.

28 U.S.C. § 1348 (emphasis added). WFB "is a 'national banking association' otherwise known as a 'national bank.'" <u>Taheny v. Wells Fargo Bank, N.A.</u>, 878 F.Supp.2d 1093, 1097 (E.D. Cal. 2012).

Section 1348 does not define the term "located" for purposes of establishing jurisdiction. <u>See</u>, <u>generally</u>, 28 U.S.C. § 1348. "Over the years, the courts have struggled over what 'located' means in this context." <u>Taheny</u>, 878 F.Supp.2d at 1098. Courts have generally settled upon one of the following definitions: "(1) where the bank has its 'main office;' (2) where the bank has branches; (3) where the bank's 'principal place of business' is; and (4) some combination of the prior three." <u>Id.</u> The Ninth Circuit, in <u>American Surety Co. v. Bank of Cal.</u>, 133 F.2d 160 (9th Cir. 1943), noted the lack of consensus regarding the term's definition and instead focused on the "close analogy between [national banking associations] and a corporation national in scope . . . [whose] citizenship . . . is fixed by its principal place of business[.]" <u>Id.</u> at 162. Ultimately, the <u>American Surety</u> court saw no error in the trial court's holding that diversity of citizenship was established where the defendant, Bank of California, was a citizen "only of the state in which its principal place of business [wa]s located, the State of California."[4] <u>Id.</u>

More than 50 years after <u>American Surety</u>, the Supreme Court, in <u>Wachovia Bank v. Schmidt</u>, 546 U.S. 303, 126 S.Ct. 941 (2006), considered the concept of citizenship of federally

---

[4] Other circuits have also held that a national banking association is located in the state where it maintains its principal place of business. <u>See</u> <u>Firstar Bank, N.A. v. Faul</u>, 253 F.3d 982, 994 (7th Cir. 2001) (holding that "a national bank is 'located' for purposes of 28 U.S.C. § 1348 in the state where the bank's principal place of business is found and the state listed on its organization certificate."); <u>Horton v. Bank One, N.A.</u>, 387 F.3d 426, 436 (5th Cir.), <u>cert.</u> <u>denied</u>, 546 U.S. 1149 (2006) (noting that "the definition of 'located' is limited to the national bank's principal place of business and the state listed in its organization certificate and its articles of association.").

chartered national banks. See id. at 313, 126 S.Ct. at 948-49 ("[T]he term 'located,' as it appears in the National Bank Act, has no fixed, plain meaning."). The Schmidt Court noted that "[f]ederally chartered national banks . . . are not incorporated by 'any state[ ]' [and] [f]or diversity jurisdiction purposes, therefore, Congress has discretely provided that national banks 'shall . . . be deemed citizens of the States in which they are respectively located.'" Id. at 306, 126 S.Ct. at 945 (quoting 28 U.S.C. § 1348). The Schmidt Court held that the term "located" "gain[ed] its precise meaning from context" and, as such, for purposes of 28 U.S.C. § 1348, a national bank "is a citizen of the State in which its main office, as set forth in its articles of association, is located." Id. at 307, 126 S.Ct. at 945 (emphasis added). Citing to Horton and Firstar, the Supreme Court stated that, "to achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business." See id. at 317 n. 9, 126 S.Ct. at 951 n. 9.[5]

     WFB points to footnote 1 of Schmidt, which cites to 12 U.S.C. § 36(g)(3)(B), for the proposition that "[t]he term 'home State' means the State in which the main office of a national bank is located." (See NR at 9) (quoting 12 U.S.C. § 36(g)(3)(B)). However, the Schmidt Court expressly refrained from deciding whether a bank was located in both the state of its main office and of its principal place of business. See Schmidt, 546 U.S. at 315 n. 8, 126 S.Ct. at 949-50 n. 8 ("Other readings mentioned in Court of Appeals opinions are the bank's principal place of business and the place listed in the bank's organization certificate. Because this issue is not presented by the parties or necessary to today's decision, we express no opinion on it.") (internal citations omitted). Indeed, "[n]either the Supreme Court nor the Ninth Circuit, nor any intervening Congressional enactment has ever held or instructed that a national bank is not located in the state of its principal place of business." Taheny, 878 F.Supp.2d at 1099. Thus, "Schmidt left open

---

   [5] The Schmidt Court further stated that "[t]he counterpart provision [to 28 U.S.C. § 1332(c)(1)] for national banking associations, § 1348, however, does not refer to 'principal place of business'; it simply deems such associations 'citizens of the States in which they are respectively located.' The absence of a 'principal place of business' reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide." 546 U.S. at 317 n. 9, 126 S.Ct. at 951 n. 9.

the door to <u>either of two interpretations</u> [of § 1348], that a national bank is a citizen of: (1) only its state of association (the state in which its main office is listed in its articles of association) or (2) both its state of association and the state in which its principal place of business is located." <u>Martinez</u>, 2013 WL 2237879, at * 3 (emphasis added).

      WFB argues that post-<u>Schmidt</u> decisions "have held that § 1348 does not include the principal place of [business] test, leaving national banks a citizen of only one state – that of its main office." (<u>See</u> NR at 4). However, "[a]s the Supreme Court did not determine whether a national bank could also be a citizen where it has its principal place of business, the appellate and district courts have taken two different approaches on the issue." <u>Grace v. Wells Fargo Bank, N.A.</u>, 2013 WL 663169, *3 (S.D. Cal. 2013). For example, as WFB notes, a divided Eighth Circuit panel, in <u>Wells Fargo Bank, N.A. v. WMR e-PIN, LLC</u>, 653 F.3d 702 (8th Cir. 2011), held that a bank's principal place of business was not relevant to citizenship. <u>See</u> 653 F.3d at 709 ("Had Congress wished to retain jurisdictional parity [when enacting the diversity jurisdiction statute governing corporate citizenship] it could have unequivocally done so. It did not, and consequently the concept no longer applies. We will not import a jurisdictional concept into § 1348 that was unknown at the time of its adoption. Accordingly, we hold that, pursuant to § 1348, a national bank is a citizen only of the state in which its main office is located."). Alternatively, a number of courts, consistent with the Fifth and Seventh Circuit decisions in <u>Horton</u> and <u>Firstar</u>, hold that national banks are located both in the state in which they have their main office as well as in the state of their principal place of business. <u>See</u> <u>Grace</u>, 2013 WL 663169, at *3; <u>Uriarte v. Wells Fargo Bank, N.A.</u>, 2011 WL 5295285, *3 (S.D. Cal. 2011) ("[T]he Court believes the approach advanced by the Fifth and Seventh Circuits, as well as by Judge Murphy's dissent in <u>WMR</u>, is more consistent with § 1348's legislative history and the Supreme Court's decision in [<u>Schmidt</u>]."); <u>Bickoff v. Wells Fargo Bank, N.A.</u>, 2013 WL 100323, *5 (S.D. Cal. 2013) (finding that "a national banking association is a citizen of both the state where it has its main office and the state of its principal place of business.").

      "The rule from <u>American Surety</u> is clear: 'the 'States in which they (national banking associations) are respectively located' are those states in which their principal places of business

6

1 are maintained.'" Rouse v. Wachovia Mortg., FSB, 2012 WL 174206, *8 (C.D. Cal. 2012) (quoting
2 American Surety, 133 F.2d at 162). "[B]ecause it is clear that American Surety focused on the
3 jurisdictional issue and made a deliberate decision to resolve it, the principal place of business test
4 is binding precedent for this Court [and] [t]he Court thus declines Wells Fargo's invitation to ignore
5 the Ninth Circuit's holding." Id. at *11; see also Firstar, 253 F.3d at 989 ("To be sure, [American
6 Surety and other cases of that vintage] were not decided yesterday. Nevertheless, stare decisis
7 counsels that we follow their reasoning unless [the defendant] can, in fact, demonstrate that
8 subsequent statutory changes or judicial decisions have rendered them infirm.").

9   To be sure, the Ninth Circuit, in Lowdermilk v. United States Bank, N.A., 479 F.3d 994 (9th
10 Cir. 2007), cited Schmidt for the proposition that a national bank was a citizen of the state where
11 its main office was located. See id. at 997 ("With respect to minimal diversity, Defendant [United
12 States Bank] is a citizen of Ohio because its main office is located in that state[.]"). Further, the
13 Eastern District's decision in California ex rel Bates v. Mortg. Elec. Registration Sys., Inc., 2010
14 WL 2889061 (E.D. Cal. 2010) ("Bates (I)"), cited to Schmidt in its consideration of the plaintiff's
15 motion to remand, noting that because Well's Fargo's main office was in Sioux Falls, South
16 Dakota, it was "a citizen of South Dakota, and . . . not a citizen of California." 2010 WL 2889061,
17 at *1 (internal quotation marks omitted). On appeal, the Ninth Circuit held that diversity jurisdiction
18 did exist in Bates (I) and that "the district court properly denied the motion to remand." See Bates
19 v. Morg. Elec. Registration Sys., Inc., 694 F.3d 1076, 1080 (9th Cir. 2012) ("Bates (II)").

20   The court, however, believes that reliance on these cases is improper. To start, in
21 Lowdermilk, "neither party challenged diversity [and], as jurisdiction was based on the Class Action
22 Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), only minimal diversity was required." Rouse, 2012
23 WL 174206, at *10 (internal citation omitted). Minimal diversity was never contested and 28
24 U.S.C. § 1348 "was not briefed or argued before [the] court." Tse v. Wells Fargo Bank, N.A., 2011
25 WL 175520, *2, n. 2 (N.D. Cal. 2011). Further, although Bates (II) affirmed the district court's
26 denial of plaintiff's motion to remand, it never explicitly overruled, challenged, or even discussed
27 the holding of American Surety. See, generally, Bates (II). To the extent that the Bates (II)
28 decision affirmed a district court decision that relied on Schmidt without acknowledging American

Surety, the court is not persuaded that it is appropriate to assume that the holding of American Surety is somehow irreconcilable with that of Schmidt. See Arizona Christian Sch. Tuition Org. v. Winn, 131 S.Ct. 1436, 1448 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed. The Court would risk error if it relied on assumptions that have gone unstated and unexamined.") (internal citations omitted); Hagans v. Lavine, 415 U.S. 528, 533 n. 5, 94 S.Ct. 1372, 1377 n. 5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."); United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38, 73 S.Ct. 67, 69 (1952) ("Even as to our own judicial power or jurisdiction, this Court has followed the lead of Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio.").

The court finds Judge Karlton's reasoned analysis in Taheny persuasive with regard to the effect of Lowdermilk on diversity, especially as applied to Bates (II). In Taheny, Judge Karlton noted that he "would not lightly decline to follow the language of a Ninth Circuit decision . . . [h]owever . . . : (I) in Lowdermilk, there is no Ninth Circuit language relating to the 'principal place of business' issue, as that language exists only in an unpublished district court order, which was not contested on appeal; and (ii) if the Ninth Circuit intended to give silent approval to the district court's implicit rejection of the principal place of business test, it was both unnecessary to the court's decision, and made in a casual manner not indicative of a binding ruling, especially one that overrules the considered holding of a prior panel." 878 F.Supp.2d at 1105. Similarly, nowhere does the Bates (II) court discuss American Surety or the principal place of business test. See, generally, Bates (II).

Like Taheny, the court declines to read into Bates (II) an implicit approval of the Schmidt test at the expense of the ruling set forth by the Ninth Circuit in American Surety. See Taheny, 878 F.Supp.2d at 1105 ("Since the issue addressed in American Surety was not contested in the Lowdermilk appeal, this court cannot attach significance to [the absence of any reference to American Surety]."). "District courts are bound by prior Ninth Circuit precedent except where

8

1 'clearly irreconcilable' Supreme Court authority intervenes, in which case 'district courts should
2 consider themselves bound by the intervening higher authority and reject the prior opinion of [the
3 Ninth Circuit] as having been effectively overruled.'" Rouse, 2012 WL 174206, at *11 (quoting Day
4 v. Apoliona, 496 F.3d 1027, 1031 (9th Cir. 2007)). Indeed, a number of district courts have held
5 that Schmidt and American Surety are reconcilable. See id. at *12 ("To the extent the holding in
6 Schmidt differed from American Surety at all, it did only insofar as it provided an additional basis
7 for citizenship. By giving effect to both holdings, the Court interprets Ninth Circuit law on this topic
8 in accord with the majority view among the Circuits.") (emphasis added); Taheny, 878 F.Supp.2d
9 at 1100 ("Wells Fargo's argument [that American Surety and Schmidt are irreconcilable] is
10 premised upon its assertion that American Surety and Schmidt both held for single, but different,
11 standards for citizenship. Instead, [these cases] each identify a different possibility for citizenship -
12 main office or principal place of business - without excluding the other possibility."); Ortiz v. Wells
13 Fargo Bank, N.A., 2013 WL 1702790, *4 (S.D. Cal. 2013) ("Wells Fargo's contention that the Ninth
14 Circuit decision in American Surety is contrary to the Supreme Court decision in Schmidt was most
15 recently addressed by Judge Karlton [in Taheny]. As explained by Judge Karlton, American
16 Surety identified a different possibility for citizenship, without excluding the other possibility as
17 articulated by the Supreme Court in Schmidt, and both possibilities for citizenship are not in
18 conflict."). Further, "[i]t is true that American Surety stated: 'The trial court was right in holding
19 that defendant is a citizen only of the state in which its principal place of business is located, the
20 State of California.' But that 'only' does not mean to the exclusion of the state where the bank has
21 its main office – also California. 'Only' means to the exclusion of the other state proposed for
22 citizenship in that case, namely Oregon, where the bank had its branch offices." Taheny, 878
23 F.Supp.2d at 1100 (internal citation omitted).

24 Under the circumstances, the court agrees that American Surety "remains binding
25 authority." Ortiz, 2013 WL 1702790, at *4; see Martinez, 2013 WL 2237879, at *6 ("The Court
26 likewise concludes American Surety remains binding precedent and joins the ranks of an
27 increasing number of courts within the Ninth Circuit so holding."). Both American Surety and
28 Schmidt posed the same question: "is a national bank a citizen of every state where it maintains

a branch office?" Taheny, 878 F.Supp.2d at 1100. Importantly, both cases responded to this query in the negative. The Schmidt court stated that national banks are citizens of the state where they maintained a main office, while the American Surety court determined that a national bank was a citizen of the state where it had its principal place of business, "without addressing whether it was also a citizen of the state where it had its 'main office'[.]" Id. at 1100-01. However, "there is no reason that 'located' cannot encompass 'principal place of business.' The Supreme Court [in Schmidt] suggests as much when it ventures that the terms 'located' and 'established' are employed alternatively or synonymously and notes that 'established' might refer to a national bank's principal place of business." Rouse, 2012 WL 174206, at *12.

WFB argues that the Ninth Circuit's reasoning in American Surety was flawed because it analogized banks to corporations for purposes of assessing jurisdiction during a time when there was no case law on national bank citizenship.[6] (See NR at 12) ("American Surety's application of the principal place of business test in 1943 is simply irreconcilable with the Supreme Court's analysis in [The Hertz Corp v. Friend, 559 U.S. 77, 130 S.Ct. 1181 (2010)] (and Schmidt) and must . . . be ignored on this point."). However, as noted in Martinez, WFB's "argument is unpersuasive [because] Schmidt and other cases have made clear that Congress intended to maintain parity between national banks and non-banking corporations, a result entirely consistent with American Surety. See Martinez, 2013 WL 2237879, at *7. "Schmidt and American Surety are not inconsistent; Schmidt acknowledged case law interpreting § 1348 as setting the principal place of business as a national bank's citizenship . . . and left that question open. Id. (citing Schmidt, 546 U.S. 317 n. 9). The Martinez court goes on to recognize that the American Surety court's conclusion that a corporation's citizenship is fixed by its principal place of business "appears to have been a misstatement of the law at the time." Id. "However, regardless of whether American Surety correctly identified the test for determining corporate citizenship as of

---

[6] The Supreme Court, in HertzCorp. v. Friend, 559 U.S. 77, 130 S.Ct. 1181 (2010), noted that "[i]n 1928 this Court made clear that the 'state of incorporation' rule was virtually absolute" such that "a corporation closely identified with State A could proceed in a federal court located in that State as long as the corporation had filed its incorporation papers in State B, perhaps a State where the corporation did no business at all." 559 U.S. at 85, 130 S.Ct. at 1188.

1943, the thrust of its analysis was predicated on jurisdictional parity between national banks and corporations; that rational was correct and consistent with Schmidt." Id.

In short, WFB has not convinced the court that it should reject the holding of American Surety. Thus, in assessing diversity jurisdiction, WFB is a citizen of both California and South Dakota. Plaintiffs are citizens of California. (See Complaint at ¶ 1). Accordingly, diversity jurisdiction does not exist now and did not exist at the time of removal.

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Motion to Remand **(Document No. 7)** is **granted**.

2. The above-captioned case shall be **remanded** back to the Los Angeles County Superior Court, County of Los Angeles, East District, Pomona Courthouse South, 400 Civic Center Plaza, Pomona, CA 92766.

Dated this 9th day of July, 2013.

/s/
Fernando M. Olguin
United States District Judge